# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| VENTURE MEDICAL, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 4:25-cv-887 |
| vs. | ) | |
| | ) | |
| WOUND CARE PLUS, LLC and | ) | |
| MITCHELL FAMILY OFFICE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Venture Medical, LLC ("Venture"), by and through its counsel, brings this Complaint against Defendants Wound Care Plus, LLC ("WCP") and Mitchell Family Office, Inc. ("MFO") (collectively "Defendants") and alleges as follows.

## PARTIES

1. Venture is a Montana limited liability company. It has two members. One member is a resident of Montana and the other member is a resident of Florida. Venture's principal place of business is located at 211 North Higgens Avenue, Suite 305, Missoula, Montana, 59802.

2. WCP is a Missouri limited liability company with its principal place of business at 4240 Blue Ridge Blvd. Suite 530, Kansas City, Missouri 64133.

3. WCP was founded in 2016 by Martha Kelso and provides wound care services across numerous states, including Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Louisiana, Minnesota, Missouri, Nebraska, New Mexico, New York, Ohio, Oklahoma, South Carolina, South Dakota, Texas, and Wisconsin. Ms. Kelso is the Registered Agent for WCP.

1

4. Upon information and belief, none of WCP's members reside in or are residents of Montana or Florida.

5. MFO is a Michigan domestic profit corporation with its principal place of business at 55 W. Maple Road, Birmingham, Michigan 48009.

6. MFO was founded in 2015 by health-care and self-described serial entrepreneur Mark Mitchell after he sold his majority stake in his home health-care business, U.S. Medical Management, to Centene. Mr. Mitchell later exited, receiving a total of $325 million.[1] Mr. Mitchell made his fortune in health care and continues to primarily invest in this sector.

7. Mr. Mitchell currently serves as the President, Treasurer, Secretary, and Director of MFO.

8. MFO announced its relationship with WCP as a partner in December 2024, noting MFO's desire to expand MFO's portfolio to include specialized wound care solutions, including in Missouri, where MFO could leverage WCP's expertise and connections in the healthcare community.

9. In January 2025, MFO employee and Head of Brand & Strategy, Ryan Zemmin, replaced Martha Kelso as WCP's CEO. Upon information and belief, Mr. Zemmin presently serves as WCP's CEO.

## JURISDICTION AND VENUE

10. The Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship among the parties and because the amount in controversy is greater than $75,000.

---

[1] https://www.cnbc.com/2025/10/09/family-offices-still-bet-on-ai-and-health-care-even-as-deals-slow-down.html (last visited November 12, 2025).

2

11. This Court has personal jurisdiction over WCP because WCP is a Missouri limited liability company with its principal place of business in Missouri and it regularly transacts business and makes contracts in this state, including with Venture. Venture's suit arises out of WCP's contacts with Missouri, and WCP has purposefully availed itself of the privilege of conducting activities in Missouri, thereby invoking the benefits and protections of its laws. This Court's assertion of personal jurisdiction over WCP is, therefore, consistent with traditional notions of fair play and substantial justice and does not violate due process.

12. This Court has personal jurisdiction over MFO pursuant to Federal Rule of Civil Procedure 4(k)(1) and Missouri Revised Statute § 506.500(1). MFO transacts business and makes contracts within the state of Missouri, including with WCP. This suit arises out of and relates to MFO's contacts with Missouri, including through MFO's partnership and relationship with WCP. MFO has purposefully availed itself of the privilege of conducting activities in Missouri, thereby invoking the benefits and protections of its laws. This Court's assertion of personal jurisdiction is, therefore, consistent with traditional notions of fair play and substantial justice and does not violate due process.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events alleged in the Complaint occurred in the Western District of Missouri.

## FACTUAL ALLEGATIONS

### *The Sales Agreement and Amendments*

14. On March 22, 2024, Venture and WCP executed a Sales Agreement for Venture to provide WCP certain placental skin graft products in return for payment by WCP as set forth in Schedule A of the Sales Agreement. *See* **Exhibit A.**

15. Under the Sales Agreement, Venture could update Schedule A "from time to time

3

to add or remove products and update pricing." *Id.* at 1 ¶ 1.

16. Venture and WCP executed three amendments to the Sales Agreement. *See* **Exhibit B, Exhibit C, Exhibit D.**

17. On September 10, 2024, Venture and WCP executed the first Amendment to Sales Agreement ("First Amendment"), effective July 1, 2024. This First Amendment set new prices for the placental skin graft products identified in the Sales Agreement, citing an increase in the average sales price of the product. *See* **Exhibit B**, at 1 ¶¶ 1–3; Schedule A.

18. The First Amendment incorporates the terms and conditions of the Sales Agreement. *Id.* at 1, ¶ 4.

19. On October 16, 2024, Venture and WCP executed the second Amendment to Sales Agreement ("Second Amendment"), effective October 21, 2024. The Second Amendment set a new price for the AmnioWrap from $1,113 to $1,208, added the Vendaje AC product, and replaced all prior and contemporaneous price schedules for BIOVANCE, AmnioWrap2, and Vendaje AC with the prices set forth in Schedule A to the Second Amendment. *See* **Exhibit C**, at 1 ¶¶ 2–4; Schedule A.

20. The Second Amendment incorporates the terms and conditions of the Sales Agreement. *Id.* at 1, ¶ 5.

21. On March 3, 2025, Venture and WCP executed the third Amendment to Sales Agreement ("Third Amendment"), effective that same date, which set new prices for BIOVANCE, AmnioWrap2, and Vendaje AC. It also added the following products as set forth in Schedule A to the Third Amendment: Progena Matrix and Grafix PL Prime. *See* **Exhibit D**, at 1 ¶¶ 1–4; Schedule A.

4

22. The Third Amendment incorporates the terms and conditions of the Sales Agreement. *Id.* at 1, ¶ 5.

23. The Sales Agreement required WCP to:

> pay for all items purchased and services rendered in accordance with the terms and conditions established by Venture. Absent any written agreement to the contrary and signed by both [WCP] and Venture, payments for all purchases [were] due on receipt of initial reimbursement payment from Medicare or private insurance and past due after invoice date.

**Exhibit A**, at 2 ¶ 1.

24. The Sales Agreement imposes a late payment charge of 1.5% per month until paid in full on any amount not paid when due to Venture. *Id.* at 1 ¶ 2.

25. The Sales Agreement also includes a reimbursement clause that requires WCP to "promptly reimburse Venture for all losses, costs, attorney's fees or other expenses incurred as a result of [WCP]'s failure to comply with the terms" of the Sales Agreement. *Id.*

26. Under the Sales Agreement, "[f]ailure or delay by Venture to bill for any such late payment or other charge or expense shall not waive or otherwise affect Venture's right to collect these charges." *Id.*

### *WCP's Purchases*

27. Since 2024, WCP has placed substantial orders for products pursuant to the Sales Agreement, as amended, and Venture fulfilled those orders.

28. Many of these purchases occurred in 2025 after MFO and WCP announced their partnership.

29. Venture submitted invoices related to each of WCP's orders.

30. However, in or around March 2025, after announcing its partnership with MFO, and despite receiving the products it ordered from Venture, WCP stopped paying its invoices.

5

31. Pursuant to the terms of the Sales Agreement, WCP's payments were due on receipt of the initial reimbursement payment from Medicare or private insurance provider and were due no later than 45 days after the invoice date.

32. Pursuant to the terms of the Sales Agreement, WCP is subject to a late payment charge of 1.5% per month, or the maximum rate permitted by law, whichever is lower, until paid in full on any amount due.

### *MFO's Partnership with WCP*

33. In December 2024, MFO formally announced its partnership with WCP.

34. Following this announcement, WCP, on behalf of itself and MFO, continued to make purchases pursuant to the Sales Agreement with Venture.

35. Despite MFO's powerful financial backing, partnership, and investment in WCP, WCP and MFO continued to improperly withhold payment for WCP's purchases under the Sales Agreement.

### *Venture's Efforts to Collect Payment*

36. Venture engaged in multiple communications with WCP and MFO regarding the past-due balances and attempted to resolve the issue amicably and without Court intervention.

37. On or around August 13, 2025, Venture sent a demand letter to WCP and Ryan Zemmin outlining the significant past-due balance and demanding immediate payment of the full balance or pursuant to a payment plan acceptable to Venture to avoid further action, including referral to a collection agency and/or the commencement of a legal action to collect the outstanding amounts owed.

6

38. Venture also engaged in multiple telephone calls with Mark Mitchell, on behalf of MFO, and Ryan Zemmin, WCP's CEO, regarding the outstanding balances and were assured that Venture would receive payment for those outstanding balances.

39. Unfortunately, despite Venture's repeated attempts to obtain payment and repeated assurances from WCP, MFO, Mr. Mitchell, and Mr. Zemmin that Venture would receive payment for the outstanding amounts owed, WCP and MFO continued to improperly withhold payment.

40. As of the date of this Complaint, WCP and MFO have an outstanding balance of at least $1,415,100.00, exclusive of late fees and interest. Specifically, WCP and MFO have not paid the following outstanding invoices:

| Invoice Number | Invoice Date | Invoice Estimated Due Date[2] | Balance |
|---|---|---|---|
| INV-0018379 | 03-17-2025 | 05-01-2025 | $4,293.00 |
| INV-0018676 | 03-21-2025 | 05-05-2025 | $5,724.00 |
| INV-0018677 | 03-21-2025 | 05-05-2025 | $5,724.00 |
| INV-0018691 | 03-21-2025 | 05-05-2025 | $22,896.00 |
| INV-0018697 | 03-21-2025 | 05-05-2025 | $22,896.00 |
| INV-0019224 | 04-03-2025 | 05-18-2025 | $22,896.00 |
| INV-0019462 | 04-09-2025 | 05-24-2025 | $5,724.00 |
| INV-0019465 | 04-09-2025 | 05-24-2025 | $5,724.00 |
| INV-0019467 | 04-09-2025 | 05-24-2025 | $5,724.00 |
| INV-0020075 | 04-23-2025 | 06-07-2025 | $5,724.00 |
| INV-0020076 | 04-23-2025 | 06-07-2025 | $5,724.00 |
| INV-0020082 | 04-23-2025 | 06-07-2025 | $22,896.00 |
| INV-0020089 | 04-23-2025 | 06-07-2025 | $5,724.00 |
| INV-0020091 | 04-23-2025 | 06-07-2025 | $8,586.00 |
| INV-0020092 | 04-23-2025 | 06-07-2025 | $8,586.00 |

---

[2]Pursuant to the terms of the Sales Agreement, WCP's payments were due on receipt of the initial reimbursement payment from Medicare or private insurance provider and were due no later than 45 days after the invoice date. The estimated date reflected in this table assumes each invoice was due within 45 days. However, Venture reserves its right to seek additional amounts owed to the extent discovery reveals that WCP received payment from Medicare or a private insurance provider on an earlier date.

7

| | | | |
|---|---|---|---|
| INV-0020096 | 04-23-2025 | 06-07-2025 | $8,586.00 |
| INV-0020098 | 04-23-2025 | 06-07-2025 | $11,448.00 |
| INV-0020105 | 04-23-2025 | 06-07-2025 | $5,724.00 |
| INV-0020238 | 04-25-2025 | 06-09-2025 | $70,119.00 |
| INV-0020239 | 04-25-2025 | 06-09-2025 | $5,724.00 |
| INV-0020240 | 04-25-2025 | 06-09-2025 | $5,724.00 |
| INV-0020432 | 04-30-2025 | 06-14-2025 | $5,724.00 |
| INV-0020469 | 04-30-2025 | 06-14-2025 | $8,586.00 |
| INV-0020471 | 04-30-2025 | 06-14-2025 | $22,896.00 |
| INV0030241 | 05-08-2025 | 06-22-2025 | $5,724.00 |
| INV0030245 | 05-08-2025 | 06-22-2025 | $5,724.00 |
| INV0030248 | 05-08-2025 | 06-22-2025 | $ 636.00 |
| INV0030249 | 05-08-2025 | 06-22-2025 | $5,724.00 |
| INV0030251 | 05-08-2025 | 06-22-2025 | $ 636.00 |
| INV0030252 | 05-08-2025 | 06-22-2025 | $70,119.00 |
| INV0030253 | 05-08-2025 | 06-22-2025 | $5,724.00 |
| INV0030255 | 05-08-2025 | 06-22-2025 | $5,724.00 |
| INV0030354 | 05-09-2025 | 06-23-2025 | $5,724.00 |
| INV0030643 | 05-15-2025 | 06-29-2025 | $5,724.00 |
| INV0030646 | 05-15-2025 | 06-29-2025 | $1,272.00 |
| INV0030647 | 05-15-2025 | 06-29-2025 | $5,724.00 |
| INV0030649 | 05-15-2025 | 06-29-2025 | $34,344.00 |
| INV0030650 | 05-15-2025 | 06-29-2025 | $ 636.00 |
| INV0030657 | 05-15-2025 | 06-29-2025 | $5,724.00 |
| INV0030659 | 05-15-2025 | 06-29-2025 | $5,724.00 |
| INV0030661 | 05-15-2025 | 06-29-2025 | $70,119.00 |
| INV0030662 | 05-15-2025 | 06-29-2025 | $5,724.00 |
| INV0030664 | 05-15-2025 | 06-29-2025 | $ 636.00 |
| INV0030997 | 05-22-2025 | 07-06-2025 | $ 636.00 |
| INV0030998 | 05-22-2025 | 07-06-2025 | $70,119.00 |
| INV0030999 | 05-22-2025 | 07-06-2025 | $5,724.00 |
| INV0031001 | 05-22-2025 | 07-06-2025 | $5,724.00 |
| INV0031005 | 05-22-2025 | 07-06-2025 | $5,724.00 |
| INV0031007 | 05-22-2025 | 07-06-2025 | $5,724.00 |
| INV0031009 | 05-22-2025 | 07-06-2025 | $34,344.00 |
| INV0031010 | 05-22-2025 | 07-06-2025 | $ 636.00 |
| INV0031245 | 05-29-2025 | 07-13-2025 | $1,272.00 |
| INV0031246 | 05-29-2025 | 07-13-2025 | $ 318.00 |
| INV0031247 | 05-29-2025 | 07-13-2025 | $70,119.00 |

8

| | | | |
|---|---|---|---|
| INV0031248 | 05-29-2025 | 07-13-2025 | $5,724.00 |
| INV0031249 | 05-29-2025 | 07-13-2025 | $70,119.00 |
| INV0031251 | 05-29-2025 | 07-13-2025 | $5,724.00 |
| INV0031253 | 05-29-2025 | 07-13-2025 | $5,724.00 |
| INV0031257 | 05-29-2025 | 07-13-2025 | $5,724.00 |
| INV0031262 | 05-29-2025 | 07-13-2025 | $ 636.00 |
| INV0031263 | 05-29-2025 | 07-13-2025 | $5,724.00 |
| INV0031265 | 05-29-2025 | 07-13-2025 | $22,896.00 |
| INV0031266 | 05-29-2025 | 07-13-2025 | $ 636.00 |
| INV0031278 | 05-29-2025 | 07-13-2025 | $34,344.00 |
| INV0031279 | 05-29-2025 | 07-13-2025 | $5,724.00 |
| INV0031551 | 06-05-2025 | 07-20-2025 | $5,724.00 |
| INV0031552 | 06-05-2025 | 07-20-2025 | $22,896.00 |
| INV0031554 | 06-05-2025 | 07-20-2025 | $5,724.00 |
| INV0031556 | 06-05-2025 | 07-20-2025 | $ 318.00 |
| INV0031557 | 06-05-2025 | 07-20-2025 | $1,272.00 |
| INV0031558 | 06-05-2025 | 07-20-2025 | $22,896.00 |
| INV0031560 | 06-05-2025 | 07-20-2025 | $5,724.00 |
| INV0031562 | 06-05-2025 | 07-20-2025 | $11,448.00 |
| INV0031563 | 06-05-2025 | 07-20-2025 | $ 636.00 |
| INV0031571 | 06-05-2025 | 07-20-2025 | $5,724.00 |
| INV0031634 | 06-06-2025 | 07-21-2025 | $70,119.00 |
| INV0031635 | 06-06-2025 | 07-21-2025 | $11,448.00 |
| INV0031754 | 06-10-2025 | 07-25-2025 | $5,724.00 |
| INV0031935 | 06-13-2025 | 07-28-2025 | $5,724.00 |
| INV0031937 | 06-13-2025 | 07-28-2025 | $1,272.00 |
| INV0031938 | 06-13-2025 | 07-28-2025 | $ 318.00 |
| INV0031939 | 06-13-2025 | 07-28-2025 | $5,724.00 |
| INV0031940 | 06-13-2025 | 07-28-2025 | $70,119.00 |
| INV0031941 | 06-13-2025 | 07-28-2025 | $22,896.00 |
| INV0031943 | 06-13-2025 | 07-28-2025 | $8,586.00 |
| INV0031944 | 06-13-2025 | 07-28-2025 | $ 636.00 |
| INV0031946 | 06-13-2025 | 07-28-2025 | $45,792.00 |
| INV0031953 | 06-13-2025 | 07-28-2025 | $5,724.00 |
| INV0032197 | 06-19-2025 | 08-03-2025 | $22,896.00 |
| INV0032199 | 06-19-2025 | 08-03-2025 | $5,724.00 |
| INV0032201 | 06-19-2025 | 08-03-2025 | $5,724.00 |
| INV0032202 | 06-19-2025 | 08-03-2025 | $ 318.00 |
| INV0032205 | 06-19-2025 | 08-03-2025 | $ 636.00 |

| INV0032206 | 06-19-2025 | 08-03-2025 | $ 318.00 |
|---|---|---|---|
| INV0032207 | 06-19-2025 | 08-03-2025 | $5,724.00 |
| INV0032208 | 06-19-2025 | 08-03-2025 | $70,119.00 |
| INV0032209 | 06-19-2025 | 08-03-2025 | $22,896.00 |
| INV0032500 | 06-26-2025 | 08-10-2025 | $5,724.00 |
| INV0032501 | 06-26-2025 | 08-10-2025 | $ 318.00 |
| INV0032505 | 06-26-2025 | 08-10-2025 | $5,724.00 |
| INV0032507 | 06-26-2025 | 08-10-2025 | $1,272.00 |
| INV0032508 | 06-26-2025 | 08-10-2025 | $ 318.00 |
| INV0032509 | 06-26-2025 | 08-10-2025 | $5,724.00 |
| INV0032517 | 06-26-2025 | 08-10-2025 | $5,724.00 |
| INV0032523 | 06-26-2025 | 08-10-2025 | $5,724.00 |
| INV0032591 | 06-27-2025 | 08-11-2025 | $5,724.00 |
| **Total** | | | **$1,415,100.00** |

41. WCP's and MFO's failure to pay the outstanding balances on these invoices is particularly perplexing given MFO's continued financial prosperity as evidenced by its recent investments in other areas, including MFO's September acquisition of the luxury beauty retailer Cos Bar and its purchase of the women's soccer team AFC Toronto in April.[3]

42. MFO, as a partner of WCP, is jointly and severally liable for WCP's contractual and other obligations, including WCP's breach of the Sales Agreement and all outstanding debts and obligations under that Agreement.

43. Alternatively, MFO is liable for WCP's debts because, upon information and belief, MFO had complete control over WCP and used WCP for an improper purpose and to commit wrongdoing, including to avoid paying for wound care products purchased and received from Venture and from which MFO profited. This conduct proximately caused injury to Venture.

44. Upon information and belief, at all relevant times, MFO exercised complete domination over WCP, including to dictate WCP's policy and business practices with respect to

---

[3] https://www.cnbc.com/2025/10/09/family-offices-still-bet-on-ai-and-health-care-even-as-deals-slow-down.html (last visited November 12, 2025).

10

the business transactions at issue and as evidenced by MFO's nearly immediate replacement of WCP's founder and CEO, Martha Kelso, with MFO's own employee, Ryan Zemmin.

45. Upon information and belief, after MFO partnered with WCP, including at the time of the purchases in question, WCP had no separate mind, will, or existence of its own.

46. Upon information and belief, including after the purchases in question, WCP was inadequately capitalized and lacked sufficient funds to operate properly and meet its debts.

47. Upon information and belief, WCP and MFO failed to follow corporate formalities, including by failing to keep proper records, hold meetings, or maintain a clear distinction between WCP and MFO.

48. Upon information and belief, MFO used its control over WCP to commit the wrongs and dishonest and unjust acts described herein, including to transfer or attempt to transfer its ownership interest in WCP to avoid paying Venture in contravention of Venture's legal rights.

49. MFO's conduct has injured Venture and caused Venture to suffer unjust losses in an amount greater than $1.4 million.

50. On August 13, 2025, Venture's in-house counsel sent a demand letter to WCP and MFO in a final effort to obtain payment on the outstanding invoices and the past-due balance and to resolve this issue without Court intervention.

51. To date, WCP and MFO continue to fail and refuse to pay Venture the amounts owed under the Sales Agreement for these outstanding invoices.

52. WCP and MFO owe Venture at least $1,415,100.00, plus costs and fees, including the contractually-defined late fees set forth in the Sales Agreement and attorneys' fees.

11

## COUNT I – BREACH OF CONTRACT

53. Venture repeats, realleges, and incorporates by reference each of the prior allegations of the Complaint as if fully set forth herein.

54. The Sales Agreement, as amended, is a valid and enforceable contract which, by its terms, required WCP to pay for the products it purchased from Venture at the rates set forth in Schedule A upon receipt of initial reimbursement and no later than 45 days after receipt of the invoice. **Exhibit A**, at 2 ¶ 1; Schedule A; **Exhibit B**, Schedule A; **Exhibit C**, Schedule A; **Exhibit D**, Schedule A.

55. Venture fully performed its obligations under the Sales Agreement.

56. WCP breached the Sales Agreement by failing to pay Venture for the products it purchased under the Sales Agreement and that were provided by Venture.

57. WCP's failure to pay Venture the amounts owed under the Sales Agreement constitute a material breach of WCP's obligations and have damaged Venture by more than $1.4 million, exclusive of costs and fees, the total amount of which will be proven at trial.

58. Venture is contractually entitled to a late payment charge of 1.5% per month or the maximum rate permitted by law, whichever is lower, until WCP's outstanding balance is paid in full.

59. WCP is likewise required to reimburse Venture for all losses, costs, attorneys' fees, and other expenses incurred as a result of WCP's failure to comply with the terms of the Sales Agreement.

60. MFO, as a partner of WCP, is jointly and severally liable for WCP's contractual obligations, including its breach of the Sales Agreement and all outstanding debts and obligations under that Agreement.

12

61.     Alternatively, MFO is liable for WCP's debts because, upon information and belief, MFO had complete control over WCP and used WCP for an improper purpose and to commit wrongdoing, including to avoid paying for wound care products purchased and received from Venture and from which MFO profited. This conduct proximately caused injury to Venture.

WHEREFORE, Venture respectfully requests the Court enter judgment in its favor and against WCP and MFO in an amount to be determined at trial, plus interest, costs, late fees, attorneys' fees, and for such other and further relief available at law or in equity and as this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT

62.     Venture repeats, realleges, and incorporates by reference each of the prior allegations of the Complaint as if fully set forth herein.

63.     In the alternative, WCP and/or MFO have been unjustly enriched at Venture's expense.

64.     Venture conferred a benefit on WCP and/or MFO, as WCP's partner and/or owner, when Venture provided various wound care products to WCP, including as reflected in the invoices identified above.

65.     WCP and MFO appreciated and were enriched by these products and realized the value of the benefit conferred by Venture.

66.     To allow WCP and/or MFO to accept and retain the benefit of these products under the circumstances and without compensating Venture would be inequitable and unjust.

WHEREFORE, Venture respectfully requests the Court enter judgment in its favor and against WCP and MFO in an amount to be determined at trial, plus interest and costs, and for such other and further relief available at law or in equity and as this Court deems just and proper.

13

## COUNT III – QUANTUM MERUIT

67. Venture repeats, realleges, and incorporates by reference each of the prior allegations of the Complaint as if fully set forth herein.

68. In the alternative, WCP and/or MFO are liable under a quantum meruit theory.

69. Venture conferred a benefit on WCP and MFO when it provided various wound care products to WCP and/or MFO, as WCP's partner and/or owner, at WCP's request and with MFO's acquiesce, including as reflected in the invoices identified above.

70. WCP and MFO appreciated and recognized the benefit conferred by Venture.

71. The wound care products Venture provided to WCP and MFO have a certain and reasonable value.

72. WCP and MFO accepted and retained the benefit conferred by Venture.

73. To allow WCP and MFO to accept and retain the benefit of these products under the circumstances and without paying Venture would be inequitable and unjust.

74. Despite repeated requests from Venture, WCP and MFO have failed and refused to pay the reasonable value of these products and materials.

WHEREFORE, Venture respectfully requests the Court enter judgment in its favor and against WCP and MFO in an amount to be determined at trial, plus interest and costs, and for such other and further relief available at law or in equity and as this Court deems just and proper.

## COUNT IV – FRAUDULENT TRANSFER
### (Against MFO)

75. Venture repeats, realleges, and incorporates by reference each of the prior allegations of the Complaint as if fully set forth herein.

14

76. MFO, as a partner of WCP, is jointly and severally liable for WCP's contractual obligations, including its breach of the Sales Agreement and all outstanding debts and obligations under that Agreement.

77. Alternatively, MFO is liable for WCP's debts because, upon information and belief, MFO had complete control over WCP and used WCP for an improper purpose and to commit wrongdoing, including to avoid paying for wound care products purchased and received from Venture and from which MFO profited. This conduct proximately caused injury to Venture.

78. Upon information and belief, MFO now seeks to unlawfully avoid these outstanding debts, including in violation of the Missouri Uniform Fraudulent Transfer Act, by transferring its ownership interest in WCP. Specifically, despite MFO's and Mr. Mitchell's knowledge of the outstanding debts owed to Venture—including debts incurred during MFO's partnership with WCP and from which MFO profited—MFO has transferred, conveyed, assigned, and/or sold its interest in WCP, and it has done so with the actual intent to hinder, delay, and/or defraud Venture.

79. Upon information and belief, this transaction is different from MFO's usual method of transacting business, including because the transfer occurred less than 12 months after MFO's initial investment.

80. Upon information and belief, MFO's desire to transfer its interest in WCP is motivated by the substantial debts it incurred and Venture's increased efforts to collect on those debts, including Venture's stated intent to pursue all available legal remedies if the parties could not reach an agreement on the past-due balances.

15

81. Upon information and belief, despite the transfer, MFO retains possession and/or control of WCP, including through its employee, Ryan Zemmin, who continues to serve as WCP's CEO.

82. Upon information and belief, MFO's conduct has caused WCP to become insolvent and unable to satisfy its debt to Venture.

83. Upon information and belief, MFO has transferred its interests in WCP in anticipation of and to avoid a lawsuit by Venture to collect on the outstanding amounts owed and/or to otherwise avoid execution on these debts.

WHEREFORE, Venture respectfully requests the Court enter judgment in its favor and against MFO, and grant Venture all relief available under R.S.Mo. § 428.039, including avoidance of the transfer to the extent necessary to satisfy Venture's claims and/or other available remedies against MFO's property or as the circumstances may require, and for such other and further relief available at law or in equity and as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Venture Medical, LLC respectfully requests the Court enter judgment in its favor and against Defendants Wound Care Plus, LLC and Mitchell Family Office, Inc. and grant Venture the following relief:

A. Find that WCP breached the Sales Agreement, as amended;

B. Find that MFO, as WCP's partner, is jointly and severally liable for WCP's breach of the Sales Agreement;

C. Find, in the alternative, that MFO is liable for WCP's debts because, at all relevant times, MFO had complete control over WCP and used WCP for an improper purpose and to

16

commit wrongdoing, including to avoid paying for wound care products purchased and received from Venture and from which MFO profited, which proximately caused injury to Venture;

D. Find, in the alternative, that WCP and/or MFO have been unjustly enriched at Venture's expense and that to allow WCP and MFO to accept and retain the benefit of the wound care products provided by Venture under the circumstances, and without compensation, would be inequitable and unjust;

E. Find, in the alternative, that WCP and/or MFO are liable under a quantum meruit theory because despite repeated requests from Venture, WCP and MFO have failed and refused to pay the reasonable value of the wound care products and materials provided by Venture and to allow WCP and MFO to accept and retain the benefit of these products under the circumstances, and without paying Venture, would be inequitable and unjust;

F. Find that MFO fraudulently transferred its interest in WCP and/or otherwise violated the Missouri Uniform Fraudulent Transfer Act, and grant Venture all relief available under R.S.Mo. § 428.039, including avoidance of the transfer to the extent necessary to satisfy Venture's claims and/or other available remedies against MFO's property or as the circumstances may require;

G. Award Venture recoverable damages in an amount to be determined at trial, including an award of actual damages, contractual late fees, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs; and

H. Award such other and further relief available in law or equity and as this Court deems just and proper.

17

Dated: November 12, 2025.                    Respectfully submitted,

*/s/ Taylor Concannon Hausmann*

Taylor Concannon Hausmann,          MO 67056
Katie R. Griffin,                   MO 74548
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone:     816.983.8000
Facsimile:     816.983.8080
taylor.hausmann@huschblackwell.com
katie.griffin@huschblackwell.com

***Attorneys for Plaintiff Venture Medical, LLC***

18